UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MICHAEL ANTINUCHE,

                           Petitioner,       :

          - against -

ANTHONY ZON, Superintendent, Wende
Correctional Facility,

                        Respondent.   :

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**

1:05-cv-01246-ENV

VITALIANO, D.J.

      In 2001, petitioner Michael Antinuche was convicted of two counts of criminal

possession of a weapon in the third degree and sentenced, as a persistent violent felony offender,

to 25 years to life in prison. In March 2005, petitioner filed a timely *pro se* habeas corpus

petition pursuant to 28 U.S.C. § 2254 claiming that: (1) he was denied a fair trial as a result of

prosecutorial misconduct; (2) his sentence was harsh and excessive; and (3) his adjudication as a

persistent violent felony offender was unconstitutional under the principles enunciated in

Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000). For the reasons set forth below,

the petition is denied. Subsidiarily, petitioner's second request for reconsideration of an order

denying a stay to permit exhaustion of Sixth Amendment ineffective assistance of counsel claims

is also denied.

## BACKGROUND

**A. Petitioner's Trial and Conviction**

      On February 22, 2000, following a traffic stop in Queens, New York, a loaded .38 caliber

handgun was recovered by law enforcement officers from under the driver's seat of petitioner's

car. Antinuche was driving the vehicle at the time, with his brother, David, riding in the front seat and three other men in the back seat. Following discovery of the gun, petitioner and all four passengers were arrested, and petitioner was subsequently charged with one count of second degree criminal possession of a weapon and two counts of third degree criminal possession of a weapon.

At Antinuche's jury trial in Queens County Supreme Court, the prosecution's evidence presented a compelling case for conviction. Upon spotting two men whom he knew to be detectives sitting in an unmarked car, Antinuche quickly backed his car up the street, but was blocked by another police car with two more detectives behind him. He then jumped out of his car, ignored the detectives' orders to show his hands, looked up and down the block, leaned his upper body back into the car and came back out several seconds later with his hands in the air. After the four passengers were removed from the car, one of the detectives observed the gun under the driver's seat, with its barrel facing the rear of the car. The prosecutor argued that Antinuche's conduct, as well as the location and placement of the gun, overwhelmingly supported the conclusion that petitioner had placed the gun under the driver's seat.

The primary defense witness was Jason Bonn, who had been seated in the middle of the back seat of the car on the night of the traffic stop. Bonn testified that the gun belonged to him and that he had purchased it the night before. Bonn further testified that the gun was in his waistband and covered by his shirt, and that nobody else in the car knew he had it on him. When police surrounded the car, according to Bonn, he grabbed the gun by the handle with his left hand and placed it under the driver's seat. Prior to cross-examining Bonn, the prosecutor sought permission from the court to question him about his relationships with the Antinuche brothers, and to attempt to establish that Bonn, petitioner and his brother had used the gun recovered in the

2

car to commit a robbery earlier in the day, that Bonn was a member of a gang that was led by petitioner and his brother, and that Bonn sold drugs for David Antinuche. The prosecutor stated that the evidence was generally relevant to assessing Bonn's interest and bias, and specifically, that the evidence of the robbery was relevant and admissible in light of Bonn's testimony that he alone possessed and controlled the gun. Defense counsel objected that this tack would be prejudicial and not probative of the charges against petitioner, and would amount to evidence of an uncharged crime of which the defense had not been given notice. After hearing both sides, the court permitted the prosecutor to proceed with the requested line of questioning.

On cross examination, Bonn repeatedly denied that he ever participated in any other criminal activity with petitioner and his brother. Bonn maintained that he decided to testify because he believed it to be the right thing to do, not because he was afraid of petitioner and/or his brother, or wanted to curry favor with them, or because he knew that he faced the least possible penalty of anyone else in the car given his relatively young age and clean criminal record. Bonn also denied that David had told him to "take the weight" for petitioner's gun charge, and either denied or stated that he did not recall receiving several dozen phone calls from petitioner between his arrest and the trial.

During summation, defense counsel asserted that the prosecutor's cross examination of Bonn was an attempt to "dirty up" petitioner and "had nothing whatsoever to do with the gun" (Tr. at 319-20). Counsel told the jury that Bonn was "truthful," (Tr. at 326), and warned the jury that they could not infer from a question that was answered in the negative that the answer was really in the affirmative. In turn, the prosecutor argued in his summation that the matters on which he had questioned Bonn pertained to Bonn's credibility, and advised the jury that Bonn's "interest, his bias, his motive to lie are all areas that you must consider when determining

3

whether or not you want to credit any or all of his testimony." (Tr. at 340). The crux of the prosecutor's summation was that Bonn's testimony was implausible and contradictory, and that the evidence pointed to the conclusion that Antinuche and his brother, who Bonn was close with and looked up to, had pressured Bonn into taking the fall.

Following the close of the evidence, the court specifically instructed the jury that evidence suggesting Bonn, petitioner, and/or petitioner's brother might have previously committed bad acts was admitted only in an effort to establish that Bonn was biased or had a reason to lie, and was not to be viewed as proof that petitioner was guilty of, or had a propensity to commit, the crimes charged in the indictment. The court also extensively and emphatically cautioned the jury that, among other things, statements by the court and/or counsel did not constitute evidence, and that petitioner was to be presumed innocent until proven guilty beyond a reasonable doubt.

After deliberation, the jury was unable to reach a verdict on the second degree weapon possession count, but convicted Antinuche on both third degree counts.

## B. Petitioner's Sentence

Criminal possession of a weapon in the third degree is classified as a Class D violent felony offense under New York Law, see N.Y. Penal Law § 70.02(1)(c), punishable by a sentence that varies pursuant to statute with the criminal history of the defendant. For a first time violent felony offender, convicted of third degree criminal possession of a weapon, the trial judge has discretion to impose a sentence ranging from no prison time at all to a maximum of seven years. See N.Y. Penal Law § 70.02(2)-(4). A defendant with one prior violent felony conviction must be sentenced to a prison term with a minimum of five and a maximum of seven years. See N.Y. Penal Law § 70.04(3)(c). A defendant with two or more prior violent felony

4

convictions is, subject to certain exceptions not relevant here, deemed to be a persistent violent felony offender ("PVFO") and, as such, must be sentenced to a prison term with a minimum of 12 to 25 years and a maximum of life.  See N.Y. Penal Law § 70.08.

Petitioner was sentenced by Queens County Supreme Court Justice Robert J. Hanophy on January 10, 2001.  At the outset of the sentencing hearing, the court clerk stated that the prosecutor had provided the court with a statement indicating the following details of petitioner's prior criminal history:[1] (1) on May 30, 1990, petitioner pled guilty to second degree attempted robbery, a Class D violent felony, and was sentenced to two and a half to five years in prison on June 20, 1990; and (2) on July 11, 1994, petitioner again pled guilty to second degree attempted robbery, a Class D violent felony, and was sentenced to three and a half to seven years in prison on September 30, 1994.[2]  The clerk then informed Antinuche:

> You may admit or deny you are the person so named.  You may also challenge any [allegation] made in the statement.  You must testify to a particular allegation you wish to challenge or unchallenged allegations shall be deemed to be admitted. You may also challenge previous convictions on the grounds it was unconstitutionally obtained.  Failure to make such a challenge constitutes a waiver on your part of any allegations of unconstitutionality.

(Pet. Ex. B. at 3).  Petitioner stated that he admitted he was the person named in the statement and that he did not wish to challenge the constitutionality of those convictions.

Based upon petitioner's prior felonies, the prosecutor asked the court to adjudicate petitioner a "mandatory persistent violent felony offender."  (Id. at 4).  Defense counsel argued that, pursuant to Apprendi, "any factors which would raise [petitioner's] sentence beyond the statutory maximum of seven years would have to be found [beyond] a reasonable doubt by a

---

[1] "[I]n any case where it appears that a defendant who stands convicted of a violent felony offense . . . has previously been subjected to two or more predicate violent felony convictions . . . and may be a persistent violent felony offender as defined in section 70.08 of the penal law," the prosecutor must file a statement reflecting the date and place of each such predicate conviction, as well as the sentence imposed and time served. N.Y. Crim. Proc. Law § 400.16.

[2] Effective October 1, 1995, the statutory minimum for a Class D violent felony committed by a defendant with one prior violent felony conviction was increased to five years. See N.Y. Penal Law § 70.04(c)(3).

5

jury. They were not." (Id.). The prosecutor responded that <u>Apprendi</u> did not bar enhancement of a sentence above the statutory maximum based on the fact of a prior conviction and, petitioner having conceded his prior convictions, such an enhancement was in fact required by New York law. The judge agreed.

Before imposing petitioner's sentence, the judge gave each side a chance to speak. Defense counsel argued that, because the jury had not found intent beyond a reasonable doubt on the gun charge, and the maximum sentence without petitioner's prior history would be a mere seven years, the court should exercise its discretion to sentence defendant to the minimum of 12 years to life. The prosecutor argued that petitioner was 29 years old and had already been convicted of four felonies, pointed out that he had committed his second felony only months after he was paroled on the first, noted that petitioner had picked up a chair and had thrown it at the prosecution table in the courtroom while screaming threats, and asked the court to sentence him to the maximum of 25 years to life "which would reflect this defendant's long prior criminal history at a young age." (Id. at 11). The defense stated that the prosecutor's statement did not "reflect an application for an appropriate sentence based on the defendant's history and conduct and particularly his conduct in the case for which he stands convicted." (Id. at 12). After their respective positions were aired, Judge Hanophy concluded:

> Okay, Mr. Antinuche. I am afraid you're a perfect example of the cancer that permeates our Criminal Justice System and that is the unfettered use of early parole. I am of the personal opinion that there's a small percentage of our population that is responsible for most of our violent crimes. If we could keep this a small percent, the criminals, in the maximum of time, then the rest of society can be safe in their own homes and places of business. You're not being sentenced for a gun, Mr. Antinuche. You're being sentenced for this: This is your criminal record which you produced to date and you're only 29 years old. That is what you're going to be sentenced for. Not the throwing the chair at the DA, not the being in the car caught with a gun, but for everything including your rap sheet here, which is somewhere near seven or eight feet long. And for the crime of criminal possession of a weapon in the third degree, which makes you a

mandatory persistent violent felon. I am going to sentence you to the full measure of the law which is 25 years to life.

(Id. at 13-14).

## C. Post-Conviction Procedural History

In March 2003, petitioner's appellate counsel filed a timely notice of appeal on Antinuche's behalf, claiming that petitioner was denied a fair trial by prosecutorial misconduct during cross examination of Bonn and by the prosecutor's summation. Petitioner argued, *inter alia*, that the prosecutor had presented the jury with evidence of additional uncharged crimes and unfairly discredited Bonn by insinuating that his testimony was erroneous and dishonest. In September 2003, petitioner's appellate counsel filed a supplemental brief raising two additional claims: (1) that the sentence imposed was harsh and excessive; and (2) that petitioner's adjudication and sentence pursuant to New York's PVFO statute was unconstitutional under the principles enunciated in Apprendi, because his status as a PVFO was not submitted to a jury and proven beyond a reasonable doubt. On March 1, 2004, the Appellate Division affirmed petitioner's conviction, specifically holding that petitioner had failed to preserve for appellate review many of the alleged instances of prosecutorial misconduct and that, to the extent the argument was preserved for appellate review, it lacked merit. See People v. Antinuche, 5 A.D.3d 390, 772 N.Y.S.2d 545 (2nd Dep't 2004). The court added that the sentence imposed was not excessive and that petitioner's remaining contention regarding the constitutionality of his adjudication as a PVFO was "without merit." Id. On May 7, 2004, the Court of Appeals denied petitioner's application for leave to appeal. See People v. Antinuche, 2 N.Y.3d 795, 814 N.E.2d 466, 781 N.Y.S.2d 294 (2004).

On March 8, 2005, petitioner filed the instant *pro se* habeas petition, raising the same three claims that were presented on direct appeal in state court. On August 15, 2005, the Queens

7

County District Attorney filed respondent's opposition, arguing that: (1) petitioner's prosecutorial misconduct claim was barred from federal court review by an adequate and independent state procedural ground because the Appellate Division found it to be unpreserved for appeal, and in any event, the prosecutor's conduct was proper and did not deprive petitioner of a fair trial; (2) petitioner's claim that his sentence was excessive did not raise a federal constitutional question cognizable on habeas review; and (3) petitioner's sentence did not violate Apprendi because the enhanced sentence was based solely on the fact, conceded by petitioner in open court, that he had previously been convicted of two other violent felonies.

Approximately two weeks after respondent submitted its opposition, on August 29, 2005, petitioner filed a motion for a "stay and abeyance" to permit him to return to state court in order to exhaust, via a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, certain claims of ineffective assistance of counsel ancillary to the claims in his habeas petition,. Specifically, as to his prosecutorial misconduct claim, petitioner stated that trial counsel was ineffective for neglecting to make contemporaneous objections to prosecutorial remarks, request curative instructions or other ameliorative action or present evidence refuting the prosecutor's prejudicial remarks, including wiretap evidence in the prosecutor's possession. As to his Apprendi claim, petitioner stated that trial counsel was ineffective for failing to advise him of the consequences of admitting to the constitutionality of his prior convictions at sentencing or investigate mitigating factors for sentencing purposes. Petitioner noted that he had difficulty obtaining documents relevant to his trial from his prior trial counsel, and that he was in the process of attempting to secure a copy of his pre-sentence report via court order. In the event that he was not granted a stay, petitioner requested in the alternative a 30-day extension of time to reply to respondent's opposition to his habeas petition.

8

Respondent argued against petitioner's request for a stay pursuant to <u>Rhines v. Weber</u>, 544 U.S. 249, 125 S. Ct. 1528 (2005), in which the Supreme Court held that, before exercising discretion to stay a "mixed petition" to allow a petitioner to present unexhausted claims in state court, a district court must determine that petitioner has shown "good cause" for the failure to exhaust and that petitioner's unexhausted claims are not "plainly meritless." 544 U.S. at 277, 125 S. Ct. at 1535. First, respondent contended that petitioner had not established "good cause" for his failure to exhaust because he could have filed a § 440 motion prior to his habeas petition and had not explained why he did not. Second, respondent pointed out that the unexhausted ineffective assistance claims would be time-barred from federal habeas review because more than a year had passed since petitioner's state court conviction became final. Third, respondent stated that the unexhausted claims would be procedurally barred from review in state court as well, since their basis was readily apparent from the record and thus they could have been raised on direct appeal, and accordingly petitioner's proposed § 440 motion would be futile. On September 22, 2005, petitioner's motion for a stay was denied by Judge Townes on the grounds urged by respondent. In a separate order issued approximately two weeks later, the Court extended petitioner's time to reply to respondent's opposition to his habeas petition until November 16, 2005, after which time the Court stated that it would consider the petition to be fully briefed.

On October 4, 2005, petitioner requested reconsideration of the Court's denial of the motion to stay, stating that he had not yet managed to obtain a copy of his pre-sentence report. The motion for reconsideration was denied on October 28, 2005, on the basis that petitioner had not shown that the Court had overlooked matters put before it on the underlying original motion.

On November 3, 2005 petitioner submitted another request for reconsideration, to which he attached a state court order, dated September 29, 2005, which granted his motion to obtain a copy of his pre-sentence report.[3] Petitioner stated: "This pre-sentence report was used as evidence to sentence me to 25 years to life, for a gun possession charge. Counsel failed to utilize evidence available to him that could have been used to challenge the constitutionality of my prior convictions. I should be permitted to exhaust this claim in the State court in order to fairly attack my conviction and sentence as a violation of my constitutional rights." (Dkt. 14).

## DISCUSSION

### A. Motion for Reconsideration

As an initial matter, the Court denies petitioner's second request for reconsideration of the denial of his motion to stay these proceedings to allow him to present unexhausted Sixth Amendment ineffective assistance claims in state court, for the same reason that his first request for reconsideration was denied. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see E.D.N.Y. Local Civil Rule 6.3 (a motion for reconsideration shall "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked"). The requirements of Local Rule 6.3 are strictly construed in order to keep the court's docket free of unnecessary and pointless re-litigation of issues already resolved. See Bell Sports, Inc. v. Sys. Software Assocs., Inc., 71 F. Supp. 2d 121, 125-26 (E.D.N.Y. 1999) ("The difficult burden imposed on the moving party has been established in order to dissuade repetitive arguments on issues that have already been considered

---

[3] Although petitioner did not explicitly say so, the Court assumes, given the often sluggish pace of the prison mail system, that petitioner had not yet received the September 29, 2005 state court order when he submitted his initial request for reconsideration of the motion to stay on October 4, 2005.

fully by the Court." (internal quotation marks omitted)). Petitioner provides not a shred of justification for disturbing the original decision, made in an exercise of judicial discretion and in accordance with the principles articulated by the Supreme Court in <u>Rhines</u>, 544 U.S. 249, 125 S. Ct. 1528, which denied petitioner's request to stay his habeas petition to permit exhaustion of additional claims. Accordingly, the second motion for reconsideration is denied.

**B. Standard of Review for Habeas Petition**

This petition is subject, of course, to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a federal writ of habeas corpus may not be granted to a state prisoner held subject to the judgment of a state court unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (citation omitted). Clearly established federal law "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" See <u>Carey v. Musladin</u>, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (<u>quoting</u> <u>Williams</u>, 529 U.S. at 412, 120 S. Ct. at 1523). To be "clearly established" under AEDPA, federal law must be "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" <u>McKinney v. Artuz</u>, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable" <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001) (internal quotation marks omitted).

## C. Claim One: Prosecutorial Misconduct

Petitioner's first ground for habeas relief is his claim that, in violation of his Fourteenth Amendment right to due process, he was denied a fair trial by the conduct of the prosecutor during his trial. Petitioner properly exhausted his prosecutorial misconduct claim by raising it on direct appeal in state court. See 28 U.S.C. § 2254(b)(1)(A). In dismissing it, the Second Department held that petitioner had "failed to preserve for appellate review many of the claimed instances of prosecutorial misconduct" as required by New York's contemporaneous objection rule,[4] and declined to exercise its "interest of justice" discretion to review the unpreserved claims regardless. Antinuche, 5 A.D.3d 390, 772 N.Y.S.2d 545 (citing People v Taylor, 296 A.D.2d 512, 745 N.Y.S.2d 477 (2d Dep't 2002)); see N.Y. Crim. Proc. Law § 470.15(3)(c). The Division added: "To the extent that the argument has been preserved for appellate review, the defendant was not deprived of a fair trial by prosecutorial misconduct." Antinuche, 5 A.D.3d 390, 772 N.Y.S.2d 545.

### 1. State Procedural Bar

Failure to raise an objection to prosecutorial misconduct at trial when required by New York's contemporaneous objection rule may serve as an adequate and independent basis to preclude federal habeas review. See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); Murray v. Carrier, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007) ("[Petitioner's claim] was not raised either by specific objection or by the trial court's decision. As a consequence, . . . [w]e need not reach or decide the defendant's federal claims, since there was an independent and

---

[4] New York's contemporaneous objection rule requires a party to register a protest to a ruling or instruction "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2).

adequate state law ground for the state appellate court's decision to affirm the defendant's conviction."); Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, application of the state's preservation rule is adequate – i.e., firmly established and regularly followed."); Franco v. Walsh, 73 F. App'x 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved"); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."). While a district court may consider a petitioner's procedurally-defaulted claim if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991), these exceptions are totally unfounded here.

First, Antinuche cannot predicate cause for failure to raise contemporaneous objections on ineffective assistance of trial counsel, because he did not raise and exhaust any such claim when he had the opportunity to do so prior to filing his habeas petition. Further, as discussed above, the Court in its discretion has declined more than once to stay these proceedings to give petitioner another bite at the exhaustion apple through a subsequent filing of a § 440.10 motion in state court, which would be a mere exercise in futility given that such relief would be procedurally barred there too. See Edwards v. Carpenter, 529 U.S. 446, 453, 120 S. Ct. 1587, 1592 (2000) (holding that ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted); DiSimone v. Phillips, 461 F.3d 181, 191 (2d Cir. 2006) (stating that an ineffective assistance of counsel claim "must be

presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"). Nor has petitioner shouldered the heavy burden of showing sufficient prejudice to overcome his procedural default. See U.S. v. Frady, 456 U.S. 152, 168, 102 S. Ct. 1584, 1594 (1982) (when habeas review of a claim is barred by an independent and adequate state ground, a petitioner must show not merely that the alleged errors "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" (emphasis in original)). Finally, and most importantly, petitioner has not identified any "fundamental miscarriage of justice" that would result from this Court's inability to review his claim. Courts will only find a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496, 106 S. Ct. at 2649. To this end, a habeas petitioner establishes actual innocence by demonstrating that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks omitted). But, as previously observed, there was abundant evidence adduced by the prosecution in its case in chief – foremost, testimony regarding petitioner's suspicious behavior during the traffic stop and the placement of the gun under his seat – to support the guilty verdict that the jury reached.

However, as the Second Department did not specify which of the prosecutorial misconduct allegations were unpreserved for appeal, and therefore barred by state procedure, this Court is wary of precluding all habeas review on these grounds. See Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009) (noting that the inability to review is premised on the notion that the challenges to the conviction were "clearly rejected by the state courts" on independent grounds); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (habeas review is precluded "when the last

state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar" (internal quotation marks omitted)). Therefore, the Court will give petitioner the benefit of the doubt and consider the state court to have denied all of his prosecutorial misconduct claims on the merits, permitting substantive AEDPA review. See 28 U.S.C. § 2254(d); Acosta v. Artuz, 375 F. Supp. 2d 173, 178 (E.D.N.Y. 2005), aff'd, 575 F.3d 177 ("There is a conclusive presumption of federal jurisdiction unless the state court clearly and expressly states that its decision relies on independent state grounds").

2. *Merits*

Petitioner argues that the prosecutor's cross examination of defense witness Bonn and his closing statement were improper because he presented the jury with evidence of additional uncharged crimes, and unfairly discredited Bonn by insinuating that his testimony was erroneous and dishonest. Petitioner also argues that the prosecutor improperly acted as an unsworn witness by unfairly depicting him as a gang leader, armed robber and drug dealer.

The Court finds that the Second Department's rejection of Antinuche's prosecutorial misconduct claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law. A prosecutor's statements at trial may be beyond what controlling practice rules permit without depriving the defendant of his constitutional rights. Indeed, to warrant granting a writ of habeas corpus, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986) (internal quotation marks omitted). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974). In other words, the petitioner must demonstrate that the

15

prosecutor's misconduct amounted to "substantial prejudice." See, e.g., Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990). In determining substantial prejudice, courts consider "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (internal quotation marks omitted). By this measure, Antinuche's claim fails.

The prosecutor's questions and remarks regarding Bonn's relationship with, desire to ingratiate himself with and financial ties to petitioner and his brother was a fair and permissible effort to show that Bonn had reasons to lie on the stand. Given that Bonn's credibility was obviously a linchpin issue, and that defense counsel took the opportunity in his own summation to advocate for the witness's truthfulness, it was reasonable for the prosecutor to cast Bonn as unbelievable in his closing. See United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987) ("Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory."); United States v. Shareef, 190 F.3d 71, 79 (2d Cir. 1999).

In any event, even if the prosecutor did cross the line by overemphasizing evidence which also proved petitioner's participation in uncharged crimes, or if jurors might have been inclined to rely on the prosecutor's statements as direct evidence of petitioner's guilt of the charged crimes, any potential prejudice to defendant was neutralized by the court's thorough limiting instructions to the jury. See Hernandez, 139 A.D.2d. at 477, 527 N.Y.S.2d at 407. Finally, the weight of the evidence against petitioner suggests that conviction would have resulted even without the disputed questions and remarks. See Brecht v. Abramhamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993). Accordingly, petitioner's argument resting on prosecutorial misconduct is without merit.

### D. Claim Two: Excessive Sentence

Pursuant to applicable New York law, due to petitioner's two prior violent felony convictions, his conviction of third degree criminal possession of a weapon rendered him subject to a prison term ranging from a minimum of 12 years to life to a maximum of 25 years to life. See N.Y. Penal Law § 70.08. In petitioner's case, the sentencing judge decided in his discretion to impose the statutory maximum. On direct appeal, petitioner claimed that his sentence was excessive because his convictions, though technically classified as "violent felonies," were all relatively minor offenses that had not actually involved violence or resulted in physical injury to anyone. Petitioner did not contend that the sentence violated his constitutional rights, but instead urged the Second Department to reduce the sentence in an exercise of that court's broad plenary power to reverse or modify "a sentence [that], though legal, was unduly harsh or severe." N.Y. Crim. Proc. Law § 470.15(6)(b). The court declined, however, stating that the "sentence imposed was not excessive." Antinuche, 5 A.D.3d 390, 772 N.Y.S.2d 545.

Petitioner now reasserts the identical excessive sentence claim in his habeas petition. But, as this claim rests exclusively on state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(d). Further, it is well-settled that a prison sentence cannot be found to violate the Eighth Amendment prohibition on cruel and unusual punishment by virtue of its length so long as it falls within the established statutory range. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). Under New York law, because of Antinuche's PVFO status, his sentence of 25 years to life was within (albeit at the very top) of the permissible statutory range for a conviction of criminal possession of a weapon in the third degree. Accordingly, petitioner's excessive sentence claim is also dismissed.

17

**E. Claim Three: Adjudication as Persistent Violent Felony Offender Violated _Apprendi_**

Finally, petitioner claims that his sentencing as a PVFO violated his constitutional rights

under _Apprendi_. Specifically, Antinuche asserts that his Sixth Amendment right to a jury trial

and Fourteenth Amendment right to due process were violated because the trial court adjudicated

and sentenced him as a mandatory PVFO although his PVFO status had not been submitted to a

jury and proven beyond a reasonable doubt. Because petitioner properly exhausted this claim

and the Second Department deemed it to be meritless, see _Antinuche_, 5 A.D.3d 390, 772

N.Y.S.2d 545, this Court accords deference to the state court's decision pursuant to AEDPA.[5]

See 28 U.S.C. 2254(d).

In _Apprendi_, the Supreme Court held that "other than the fact of a prior conviction, any

fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt," rather than determined by a

sentencing court. 530 U.S. at 490, 120 S. Ct. at 2362-63 (emphasis added). The _Apprendi_ rule

applies "only when a sentencing court's findings increase the penalty faced by the defendant

above the statutory maximum for a given count, and not when they merely affect the length of a

sentence within the statutory range." United States v. White, 240 F.3d 127, 136 (2d Cir. 2001).

"[T]he statutory maximum for _Apprendi_ purposes is the maximum sentence a judge may impose

solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

Blakely v. Washington, 542 U.S. 296, 303, 124 S. Ct. 2531, 2537 (2004) (emphasis in original).

New York's PVFO statute relies solely upon the court's finding of qualifying prior

convictions to impose a sentence above what would otherwise be the statutory maximum. See

N.Y. Penal Law § 70.08 (defining "persistent violent felony offender" as someone who has

---

[5] The Court is, of course, also mindful of developments and clarifications in decisional law surrounding this issue that have ensued since the conclusion of petitioner's state court appeal process. See, e.g., Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004); Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856 (2007).

"previously been subjected to two or more predicate violent felony convictions"); <u>Quan v. Potter</u>, No. 06-CV-4841, 2007 WL 3223217, at *7 (E.D.N.Y. Oct. 29, 2007). Accordingly, the PVFO statute falls squarely within <u>Apprendi</u>'s exception for sentence enhancements based solely on prior convictions.[6] <u>See id.</u>; <u>Boutte v. Poole</u>, No. 07 Civ. 8412, 2008 WL 3166696, at *3 n.5 (S.D.N.Y. Aug. 4, 2008) (collecting cases rejecting <u>Apprendi</u> challenges to N.Y. Crim. Proc. Law § 70.08). Thus, the Court finds that the state court's adjudication and sentencing of petitioner as a PVFO was neither contrary to, nor an unreasonable application of, <u>Apprendi</u> or any other clearly-established federal law.

Furthermore, at petitioner's sentencing, he was fully apprised by the court of his rights to contest the facts of his prior convictions and/or to challenge them on constitutional grounds. Immediately thereafter, petitioner waived those rights by admitting the convictions and conceding their constitutionality. Nonetheless, after filing his habeas petition, petitioner belatedly sought to assert a claim of ineffective assistance of trial counsel based on, *inter alia*, failure to utilize available evidence to challenge the constitutionality of the prior convictions and/or advise him of the consequences of not contesting them.[7] Aside from being unexhausted,

---

[6] The same cannot be said for New York's persistent felony offender statute, N.Y. Penal Law § 70.10, which renders a defendant with at least two prior <u>non</u>-violent felonies eligible for a sentence above the statutory maximum based on the sentencing judge's consideration of the defendant's history and character and nature and circumstances of his criminal conduct. The Second Circuit recently held that § 70.10 violates the Sixth Amendment because, under that statute, imposition of an enhanced sentence requires judicial fact-finding above and beyond the fact of the prior convictions. <u>See Besser v. Walsh</u>, 601 F.3d 163, 169 (2d Cir. 2010). However, the Second Circuit stated that <u>Besser</u> did not address § 70.08, and specifically noted that § 70.08 "requires imposition of an indeterminate sentence with a statutory maximum of life imprisonment <u>solely upon the court's finding of prior felony convictions.</u>" <u>Id.</u> at 170 n.5 (emphasis added). Consequently, an enhanced sentence that was imposed pursuant to § 70.08, such as petitioner's sentence, does not implicate the same Sixth Amendment concerns as an enhanced sentence imposed pursuant to § 70.10. <u>See Quan</u>, 2007 WL 3223217, at *3.
[7] In his second letter request for reconsideration of the denial to stay these proceedings to permit exhaustion of ineffective assistance claims, petitioner stated: "I even sought to challenge the constitutionality of my prior convictions at sentencing . . . once it was explained to me the ramifications of not contesting these convictions." (Dkt. 14). Yet, there is nothing in the transcript of the sentencing hearing to substantiate Antinuche's assertion that he tried to raise constitutional claims at sentencing, either before or after he waived his right to do so. Further, in the two briefs that his appellate counsel submitted on his behalf to the Second Department, no objection to either of the two predicate convictions was presented or even mentioned in passing.

procedurally barred from further state court review as a matter of state law and time-barred from federal habeas review, Antinuche's ineffective assistance of counsel claim is a substantive nonstarter as well.

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-part inquiry set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. But, there is, of course, "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" <u>United States v. Aguirre</u>, 912 F.2d 555, 560 (2d Cir. 1990) (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 689, 104 S. Ct. at 2065). Second, a petitioner must "affirmatively prove prejudice," demonstrating that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 693-94, 104 S. Ct. at 2067-68). Where ineffective assistance in the sentencing context is alleged, the prejudice prong of <u>Strickland</u> requires a showing of a reasonable probability that, but for counsel's ineffectiveness, the sentence imposed would have been different. <u>See</u> <u>United States v. Workman</u>, 110 F.3d 915, 920 (2d Cir. 1997); <u>McNaught v. United States</u>, 646 F. Supp. 2d 372, 378 (S.D.N.Y. 2009).

The record reflects that, at sentencing, Antinuche's trial counsel advocated zealously on his behalf. Counsel attempted to persuade the sentencing court that adjudicating petitioner as a PVFO would violate <u>Apprendi</u> and, when that tack proved unsuccessful, counsel argued that mitigating circumstances surrounding petitioner's conviction warranted a sentencing at the low

end of the mandatory statutory range. Further, counsel objected to the prosecutor's characterization of the defendant as reflective of personal animus and inappropriate.

With little room to maneuver, Antinuche has made conclusory and self-serving statements that his trial counsel ignored evidence that could have been deployed to attack the constitutionality of petitioner's prior convictions. However, petitioner has provided absolutely no explanation as to what that evidence consists of, or even hinted at what sort of constitutional arguments might legitimately have been made. Further, petitioner himself at the sentencing hearing expressly acknowledged that he did not challenge the constitutionality of the convictions. Under these circumstances, nothing but sheer speculation underlies any suggestion that trial counsel was deficient in not challenging petitioner's prior conviction and/or not advising petitioner to do so. "Indeed, to challenge such a prior conviction without basis for doing so is frivolous." Wheeler v. Phillips, No. 05-cv-4399, 2006 WL 2357973, at *15 (E.D.N.Y. Aug. 15, 2006) (rejecting ineffective assistance claim based on counsel's advice to waive right to challenge prior conviction at sentencing, which was used to adjudicate petitioner a second violent felony offender). Nor could petitioner possibly carry the heavy burden of showing prejudice, given that petitioner "suggests no basis on which his counsel could have challenged, let alone successfully challenged, the previous conviction[s]," and that petitioner himself did not raise any such arguments at his sentencing despite being specifically apprised of his right to do so. Id., 2006 WL 2357973, at *16. Antinuche is not entitled to any relief from his sentence as a persistent violent felony offender.

## CONCLUSION

For all of the foregoing reasons, the petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied. Since petitioner has not made a substantial showing of the

21

denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
May 18, 2010

/S/

ERIC N. VITALIANO
United States District Judge